IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LUCRETIA LINDSEY and ERIC K. LINDSEY,<br><br>            Plaintiffs,<br><br>   vs.<br><br>CUNA MUTUAL INSURANCE SOCIETY DBA CUNA MUTUAL GROUP; and DOE DEFENDANTS 1-10;<br><br>            Defendants.  | CIVIL NO. 10-00215 JMS/BMK<br><br>ORDER DENYING DEFENDANT CUNA MUTUAL INSURANCE SOCIETY'S MOTION TO DISMISS ALL CLAIMS OF MISREPRESENTATION AND ALL CLAIMS ALLEGED BY PLAINTIFF ERIC K. LINDSEY |

**<u>ORDER DENYING DEFENDANT CUNA MUTUAL INSURANCE SOCIETY'S MOTION TO DISMISS ALL CLAIMS OF MISREPRESENTATION AND ALL CLAIMS  ALLEGED BY PLAINTIFF ERIC K. LINDSEY</u>**

**I. <u>INTRODUCTION</u>**

Plaintiffs Lucretia Lindsey and Eric K. Lindsey (collectively, "Plaintiffs") allege state law claims against Defendant CUNA Mutual Insurance Society dba CUNA Mutual Group ("CUNA" or "Defendant") stemming from Defendant's denial of Lucretia Lindsey's claim for benefits as an insured under a group credit disability policy (the "Policy").  Plaintiffs' First Amended Complaint alleges counts on behalf of Lucretia Lindsey for (1) breach on contract, (2) unfair and deceptive trade practices under Hawaii Revised Statutes ("HRS") § 480-2,   (3)

insurance bad faith, (4) negligent misrepresentation, (5) intentional misrepresentation, (6) emotional distress, and (7) punitive damages.  The claims for negligent and intentional misrepresentation, emotional distress, emotional distress (including a separate claim for loss of consortium), and punitive damages are also brought on behalf of Eric Lindsey.

Currently before the court is Defendant's Motion to Dismiss all Claims of Misrepresentation and all Claims Alleged by Plaintiff Eric K. Lindsey. (Lucretia Lindsey's claims for breach of contract, violation of HRS § 480-2, and bad faith are not at issue in the Motion.)  Based on the following, the court DENIES the Motion.

## II.  BACKGROUND

**A.   Factual Background**

This section sets forth factual allegations in the First Amended Complaint ("FAC") as relevant to the Motion to Dismiss claims for misrepresentation, emotional distress, and loss of consortium.

On September 8, 2004, Lucretia Lindsey entered into a loan agreement with Hawaii First Federal Credit Union for a principal amount of $12,281.77 to purchase a 2001 Dodge pickup truck.  FAC ¶¶ 6-7.  Lucretia Lindsey also purchased a Single Credit Disability insurance policy (the "Policy")

issued by Defendant. *Id.* ¶ 8. The Policy essentially was to make payments on the loan if Lucretia became disabled. It provides in part:

> **Total Disability Insurance Benefit**. If you are insured for disability coverage, we will pay a benefit if you file a written proof that you became totally disabled while insured and continue to be totally disabled for longer than the period stated in the Schedule. . . .
>
> **Definition of Total Disability**. During the first 12 consecutive months of total disability, Total Disability means that you are not able to perform most of the duties of your *occupation* because of a medically determined sickness or accidental injury and are under the care and treatment of a physician. After the first 12 consecutive months of Total Disability, the definition changes and requires that you not be able to perform the duties of any *occupation* for which you are reasonably qualified by education, training or experience.

*Id.* ¶ 10 (emphasis added).

When she entered into these contracts, Lucretia Lindsey was employed as a counselor and school bus driver. *Id.* ¶ 11. In April 2005, Plaintiffs were married. *Id.* ¶ 12. Lucretia Lindsey left her job in 2005. *Id.* ¶ 13. On May 27, 2008, however, she became disabled and unable to perform the duties of her occupation and therefore submitted a claim for disability benefits under the Policy. *Id.* ¶¶ 14-15.

In February 2009, someone from CUNA called Lucretia Lindsey and "represented to her that it needed to question her about her day to day acitivies in

order to properly evaluate her claim for disability benefits." She answered CUNA's questions. *Id.* ¶ 16. In June 2009, Don Enemuoh, as representative of CUNA, spoke with both Plaintiffs on the telephone. He indicated or represented to both Plaintiffs "that he needed to ask them questions about Lucretia Lindsey's day to day activities in order to properly evaluate her claim for disability benefits." *Id.* ¶ 21a. and b. Enemuoh asked both Plaintiffs about Lucretia Lindsey's day to day activities before and after the date of her disability, and did not inquire about whether she could perform duties of her occupation for which she was qualified by her education, training, or experience. *Id.* ¶ 21c. and d. Both Plaintiffs "believed that Don Enemuoh . . . asked about Lucretia Lindsey's day to day activities because that information was required in order to properly process her claim for disability benefits." *Id.* ¶ 23.

On June 15, 2009, Defendant informed Lucretia Lindsey that based on the information they received from her, she was not totally disabled and that her claim for disability benefits was denied. *Id.* ¶ 24. She appealed or asked for reconsideration. *Id.* ¶ 25.

On August 26, 2009, Lucretia Lindsey's physician prepared a memorandum describing her medical condition and stating that she is unable to work in any capacity due to her medical condition. *Id.* ¶ 26.

On September 9, 2009, Defendant wrote to Lucretia Lindsey and indicated that because she was not working when she became disabled on May 27, 2008, "total disability" under the Policy is determined based on her ability to perform day to day activities and that she does not meet this definition such that her claim remains denied. *Id.* ¶ 27.

The definition of "total disability" in the Policy (a) does not require a claimant to be working when their disability begins, and (b) does not state that, if a claimant is not working, "total disability" will be determined by a claimant's day to day activities. *Id.* ¶ 28.

According to the FAC, CUNA knew Lucretia Lindsey was not able to work when she submitted her claim and that she could not make the payments for the loan. CUNA's conduct caused Lucretia Lindsey to take out a hardship loan which extended the loan's maturity date and payment schedule. *Id.* ¶ 31.

Eric Lindsey, "in reasonable reliance on the telephone conversations he had with CUNA, used his personal funds from his social security payments to make the payments on the hardship loan." *Id.* ¶ 32. Plaintiffs reasonably relied on the statements made by CUNA, and believed that CUNA was properly evaluating Lucretia Lindsey's claim for disability benefits. *Id.* ¶ 33.

### B.  Procedural Background

On March 15, 2010, Plaintiffs filed their Complaint in the Circuit Court of the Third Circuit of the State of Hawaii.  On April 14, 2010, Defendant removed the action to this court.  On May 10, 2010, Defendant filed a Motion to Dismiss.  After briefing was completed on that Motion to Dismiss, but before the matter was heard, the parties stipulated to the filing of the FAC.

On July 29, 2010, Defendant filed a new Motion to Dismiss, now directed at the FAC.  Plaintiffs filed their Opposition on September 27, 2010, followed by Defendants' Reply on October 5, 2010.  The matter was heard on October 18, 2010.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to

legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.* at 1950.

## IV. **DISCUSSION**

A.   **Claims of Misrepresentation as to Both Plaintiffs**

CUNA argues that the FAC fails to state a claim for negligent misrepresentation at all (as to either Lucretia or Eric Lindsey) because, according to the FAC, all CUNA did was "ask questions" regarding Lucretia Lindsey's day to day activities and that there was nothing improper about asking such questions.

The parties agree that a negligent misrepresentation claim consists of the following elements:

> (1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information;
>
> (2) the person for whose benefit the [false] information is supplied suffered the loss; and

7

(3) the recipient relies upon the misrepresentation.

*Blair v. Ing*, 95 Haw. 247, 269, 21 P.3d 452, 474 (2001) (citing *Kohala Agric. v. Deloitte & Touche*, 86 Haw. 301, 323, 949 P.2d 141, 163 (1997), and Restatement (Second) of Torts § 552 (1977)).  Implicit in this statement is that there be some duty to supply information.  As cited in *Blair*, this test is taken from the Restatement (Second) of Torts § 552.  In pertinent part, the material elements of the tort of negligent misrepresentation are described in the Restatement (Second) of Torts as follows:

> § 552. Information Negligently Supplied for the Guidance of Others
>
> (1)  One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2)  Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>>
>>> (b) through reliance upon it in a transaction that he

>intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Applying this test, the court concludes that the FAC sufficiently alleges a plausible claim for relief for negligent misrepresentation as to both Lucretia and Eric Lindsey. The FAC alleges that CUNA used an improper standard to determine whether Lucretia Lindsey was disabled. The Policy requires (or represented) that CUNA uses an "occupation" standard; CUNA instead used a "day-to-day activities" standard.

The FAC alleges that CUNA "represented to [Lucretia Lindsey] that it needed to question her about her day to day actitivies in order to properly evaluate her claim for disability benefits." FAC ¶ 16. The FAC also alleges that CUNA, through its employee or agent Don Enemuoh, represented to both Plaintiffs in a separate phone call "that he needed to ask them questions about Lucretia Lindsey's day to day activities in order to properly evaluate her claim for disability benefits." *Id.* ¶ 21a. and b. Enemuoh asked both Plaintiffs about Lucretia Lindsey's day to day activities before and after the date of her disability, and did not inquire about whether she could perform duties of her occupation for which she was qualified by her education, training, or experience. *Id.* ¶ 21c.

These allegations, taken as true as is required at a motion-to-dismiss

stage, indicate that CUNA made false statements to both Plaintiffs.  CUNA told, or misrepresented to, the Lindseys that the Policy required one standard, when the Policy actually required something else.  If the allegations are true, it is a plausible theory that CUNA misled (whether intentionally or negligently) Plaintiffs into answering questions and believing that Lucretia Lindsey was not "disabled" for purposes of receiving benefits under the Policy.

In the language of the Restatement (Second) of Torts § 552, the FAC alleges (1) there was "false information," (2) provided for the guidance of others in their business transaction, (3) justifiable reliance upon the information, and   (4) failure to exercise reasonable care or competence in obtaining or communicating the information.  Additionally, both Lucretia Lindsey and Eric Lindsey fall into a category of persons "for whose benefit and guidance" the representation was made. *See* Restatement (Second) of Torts § 552(2)(a) (providing liability for loss suffered "by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it").

CUNA argues that there was no reasonable reliance on the phone conversations.  The FAC alleges, however, that Plaintiffs were led to believe that the information (day to day activities) was required to properly process the claim

for benefits. FAC ¶ 23. It alleges that, in reliance on the belief that Lucretia Lindsey did not qualify for benefits (*i.e.*, that she did not meet a day to day standard for being disabled), she took out a hardship loan. *Id.* ¶ 31. It also alleges that Eric Lindsey used funds from his Social Security to make payments on the hardship loan. Assuming the truth of those allegations, it would be improper to conclude that the allegations of reliance are not reasonable as a matter of law. Because a negligent misrepresentation claim is "plausible," the court cannot dismiss the claim at this stage. *See Iqbal*, 129 S. Ct. at 1949.

It follows that it is premature to dismiss a claim for intentional misrepresentation/fraud. The FAC alleges that CUNA made a material misrepresentation (through a specific phone conversation by a specific individual). It also alleges that CUNA knew the misrepresentation was false. FAC ¶ 68. Elsewhere, the FAC alleges that CUNA made similar misrepresentations to others in other situations, *id.* ¶ 52, which allegation could be relevant to whether CUNA's misrepresentation was intentional. There are enough specific, particular, facts alleged to state a claim for intentional misrepresentation.

**B.      Claims by Eric Lindsey for Infliction of Emotional Distress and Loss of Consortium.**

CUNA also argues that the FAC fails to state claims for negligent and intentional infliction of emotional distress, as well as a claim for loss of

consortium. CUNA relies upon non-Hawaii case law indicating that a person who is not a policyholder to an insurance contract (like Eric Lindsey) may not state a claim for *derivative* loss (e.g., emotional distress or loss of consortium) based upon a wrong committed on the policyholder (such as Lucretia Lindsey). *See Austero v. Nat. Cas. Co. of Detroit, Mich.*, 133 Cal. Rptr. 107, 109 (Cal. App. 1976); *Bornstein v. Fireman's Fund Ins. Co.*, 623 F. Supp. 814, 816 (E.D. Wis. 1985).

Plaintiffs counter by citing ambiguous Hawaii authority for the proposition that Eric Lindsey may state derivative claims for emotional distress and loss of consortium, based upon torts committed against his wife. *See Hough v. Pac. Ins. Co.*, 83 Haw. 457, 927 P.2d 858 (1996) (appearing to assume without deciding that a loss of consortium claim can be based on certain bad faith practices to a spouse); *Brown v. KFC Nat'l Mgt. Co.*, 82 Haw. 226, 921 P.2d 146 (1996) (indicating generally that if a party to a contract suffered a tortious injury, that party's spouse may have a claim for emotional distress or loss of consortium).

Count VI of the FAC is confusing. It combines two types of emotional distress (intentional and negligent) on behalf of both Plaintiffs, along with a claim that Eric Lindsey suffered loss of consortium for CUNA's practices committed against Lucretia Lindsey. Nevertheless, as for such claims by Eric Lindsey, the court concludes that the FAC sufficiently alleges valid theories of

recovery for his emotional distress and for loss of consortium.

Because the court has determined that the FAC states claims for misrepresentation as to Eric Lindsey, he may also state claims sounding in emotional distress. That is, it is not necessary for his emotional distress claims to be derivative of any wrongs committed against Lucretia Lindsey. Similarly, because the court has determined that Lucretia Lindsey has viable claims for negligent and intentional misrepresentation, there are valid claims (aside from insurance bad faith such as discussed in *Austero*) upon which Eric Lindsey may base his loss of consortium claim.[1]

In short, because the FAC sufficiently states plausible claims for emotional distress and loss of consortium by Eric Lindsey, the court need not decide whether Hawaii would adopt a theory similar to that set forth in *Austero*, limiting a loss of consortium claim based only on a bad faith claim made by a spouse.

## V. <u>CONCLUSION</u>

Based on the above, the court DENIES Defendant CUNA Mutual Insurance Society's Motion to Dismiss all Claims of Misrepresentation and all

---

[1] The parties do not dispute that a loss of consortium claim is entirely derivative. It must be based on a wrong being committed on someone else. *See Mist v. Westin Hotels*, 69 Haw. 192, 197, 738 P.2d 85, 90 (1987).

Claims Alleged by Plaintiff Eric K. Lindsey.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 29, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Lindsey et al. v. CUNA Mutual Ins. Agency, Inc.*, Civ. No. 10-00215 JMS/BMK, Order Denying Defendant CUNA Mutual Insurance Society's Motion to Dismiss all Claims of Mispreresentation and all Claims Alleged by Plaintiff Eric K. Lindsey